No. 21,608.

JAMES LONNON, *Appellant*, v. F. N. BATCHMAN et al.,
*Appellees.*

### SYLLABUS BY THE COURT.

PROMISSORY NOTE — *Signatures as Makers* — *Liability as Makers.* A
promissory note was signed as follows:

> "F. N. BATCHMAN, ⎫
> W. L. HISS,         ⎪  Members Board of
> G. W. HART,         ⎬  Directors Sunflower
> H. N. McGILL,       ⎪  Lead & Zinc Co."
> WM. GAGLEMAN,  ⎭

In an action by the payee, the answer denied that the parties exe-
cuted the note individually or were personally liable thereon, and
alleged that it was the obligation of the Sunflower Lead & Zinc Com-
pany. On the trial the court permitted them to introduce oral evidence
to show that their intention was to sign the note for the corporation,
and not for themselves as individuals, and on this evidence rendered
judgment against the payee. *Held*, following *Bank v. Jeltz*, 101 Kan.
537, 167 Pac. 1067, that it was error to receive the testimony because,
under the negotiable-instruments law (Gen. Stat. 1915, § 6590), "If
a person placing his name on a promissory note do not clearly indicate
by appropriate words an intention to be bound in a special capacity,
and sign as maker, his liability to the holder is that of maker. . . ."
(*Bank v. Jeltz*, supra, syl. ¶ 1.)

Appeal from Barton district court; DANIEL A. BANTA, judge.
Opinion filed June 8, 1918. Reversed.

*James W. Clarke*, of Great Bend, for the appellant.

*R. C. Russell*, and *F. V. Russell*, both of Great Bend, for the
appellees.

The opinion of the court was delivered by

PORTER, J.: The appellant brought suit against the appellees
on a promissory note which was drawn in the following form:

"$2,637.00.                                    Jan. 29th, 1913.

"One year after date we promise to pay to the order of James Lonnon
twenty-six hundred, thirty-seven & $^{no}/_{100}$ dollars, for value received,

Lonnon v. Batchman.

negotiable and payable without defalcation or discount and with interest from date at the rate of eight percent per annum.

F. N. BATCHMAN,
W. L. HISS,
G. W. HART,          Members Board of
H. N. McGILL,          Directors Sunflower
WM. GAGLEMAN,          Lead & Zinc Co."

The answer denied that the parties executed the note individually or that they were personally liable thereon, and alleged that the note was the obligation of the Sunflower Lead & Zinc Company. On the trial the court, over appellant's objections, permitted appellees to introduce oral evidence to show that their intention was to sign the note for the corporation, and not for themselves as individuals. The court made a finding that the note was the obligation of the corporation, and not that of the appellees, and rendered judgment against appellant, who brings the case here for review.

The trial court held that it was not clear from the face of the note whether the appellees contracted on behalf of the corporation or for themselves, and that the case is governed by the decisions in *Kline v. Bank of Tescott,* 50 Kan. 91, 31 Pac. 688; *Benham v. Smith,* 53 Kan. 495, 36 Pac. 997, and *Grocer Co. v. Lackman,* 75 Kan. 34; 88 Pac. 527. In our opinion it was error to permit the appellees to introduce oral testimony to show what their intention was in executing the note.

In *Kline v. Bank of Tescott,* supra, the note was signed:

"KANOPOLIS CREAMERY COMPANY.
H. C. WAITE, President.
W. B. WOOLEY, Secretary."

There the note purported on its face to be executed by the corporation through its president and secretary.

In *Benham v. Smith,* supra, the note was signed:

"W. M. BENHAM,
*President Odd Fellows' Hall Association.*
A. T. LEA, *Secretary."*

Accompanying the note, however, was a mortgage reciting that the corporation had that day consented that the mortgage should be signed by its president and attested by its secretary, and its corporate seal to be thereto affixed; and the mortgage was signed in the same way that the note was signed. The mortgage contained a description and identification of the

note. The two instruments were construed together as one transaction, and it was held that the president and secretary could introduce the mortgage, and also parol evidence, to show that they signed for the association only.

In the case of *Grocer Co. v. Lackman,* supra, the note was signed:

"The Kansas City & Olathe Electric Ry. Co., Wm. Lackman, President, D. B. Johnson, Secretary."

It was held admissible to show that the note was the obligation of the company, and not of Lackman and Johnson.

In the present case we have merely the note itself, and it is not signed by the president and secretary of the corporation, nor in the way in which notes are usually executed by corporations. On the contrary, it is signed by a number of individuals who describe themselves as members of the board of directors of a certain corporation. They do not sign as the board, nor even as constituting all the members of the board, which might have consisted of more members than those who signed the note. The words "Members Board of Directors Sunflower Lead & Zinc Co.," amount to nothing more than a description of the individuals who executed the instrument.

The negotiable-instruments law (Gen. Stat. 1915, § 6590) reads:

"A person placing his signature upon an instrument otherwise than as maker, drawer or acceptor is deemed to be an indorser, unless he clearly indicates by appropriate words his intention to be bound in some other capacity."

In *Bank v. Jeltz,* 101 Kan. 537, 167 Pac. 1067, this provision of the statute was construed to mean just what it says, and it was ruled that—

"If a person placing his name on a promissory note do not clearly indicate by appropriate words an intention to be bound in a special capacity, and sign as maker, his liability to the holder is that of maker, although his relation to a comaker be that of surety." (syl. ¶ 1.)

The cases of *Kline v. Bank of Tescott* and *Benham v. Smith,* supra, were both decided long before the adoption of the negotiable-instruments law. The only one of the three decisions upon which appellees rely which was decided since that law became effective is *Grocer Co. v. Lackman,* supra, which was rendered in 1907, two years after the passage of the act.

While it was said in the opinion, "It has been held in this state that where it is uncertain from the face of the note whether it was intended to be the note of the corporation or of the individuals signing, or both, if the litigation arises between the original parties evidence may be introduced to explain the ambiguity." (p. 35.)   No reference was made to the negotiable-instruments act, and obviously the effect of section 6590 of the General Statutes of 1915 was not considered.   Besides, it clearly appeared from the face of the note in that case that it was the note of the railway company, whose signature was placed upon the instrument by Lackman, President, and Johnson, Secretary.

The legislature has declared that a person signing as maker must clearly indicate by appropriate words his intention to be bound in some other capacity, or he will be held as maker. Whatever the effect of the former decisions may be, and we have pointed out what we deem sufficient to distinguish them from the present case, the negotiable-instruments law must control.   In 8 C. J. 49 it is said:

"The Negotiable Instruments Law repeals prior inconsistent laws and overrules previous decisions to the contrary.   Where the language of such an act is clear it must control whatever may have been the prior statutes and decisions on the subject.   Where there is a substantial doubt as to the meaning of the language used the old law is a valuable source of information."

We think there was no such ambiguity in the note in question as will open the door to oral testimony to show the intention of the makers.   The statute declares that their intention to be bound otherwise than as makers must be clearly indicated by appropriate words.

The judgment will be reversed and the cause remanded with directions to render judgment for the appellant as prayed for in his petition.